UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WARREN HERSHKOWITZ,<br><br>                              Plaintiff,<br><br>          -against-<br><br>THINK TECH LABS, LLC, and VIJAY MEHRA,<br><br>                              Defendants. | 13 Civ. 05564 (RMB) |

## ANSWER AND COUNTERCLAIMS

Defendants Think Tech Labs, LLC ("TTL") and Vijay Mehra (collectively, "defendants"

unless otherwise noted), by their attorneys, Haynes & Boone, LLP, for their Answer to the

Complaint in this action (the "Complaint"), state as follows:

1.      As paragraph 1 of the Complaint merely summarizes plaintiffs' allegations, no

response is necessary.  To the extent a response is required, defendants deny the allegations

contained therein.

2.      Defendants deny the allegations contained in paragraph 2 of the Complaint.

3.      Defendants deny the allegations contained in paragraph 3 of the Complaint.

4.      Defendants deny the allegations contained in paragraph 4 of the Complaint.

5.      Defendants deny the allegations contained in paragraph 5 of the Complaint.

6.      Defendants deny the allegations contained in paragraph 6 of the Complaint.

7.      Defendants deny knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 7 of the Complaint.

8.      Admit.

9.      Defendants admit that TTL is a limited liability company formed under the laws of the State of Delaware and that it currently maintains its principal place of business in Dallas, Texas, but deny the remaining allegations in paragraph 9 of the Complaint.

10.      To the extent paragraph 10 of the Complaint merely recites conclusions of law, no response is necessary.  To the extent a response is necessary, defendants deny that they regularly conduct business in New York, that they employed plaintiff, and that TTL maintains a principal office in New York City.

11.      To the extent paragraph 11 of the Complaint merely recites conclusions of law, no response is necessary.  To the extent a response is necessary, defendants deny the allegations contained in paragraph 11 of the Complaint.

12.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint.

13.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint.

14.      Defendants admit that sometime in mid-to-late 2010, plaintiff approached TTL regarding use of TTL's real estate application REthink for plaintiff's real estate consultancy company.

15.      Defendants deny the allegations contained in paragraph 15 of the Complaint.

16.      Defendants deny the allegations contained in paragraph 16 of the Complaint.

17.      Defendants deny the allegations contained in paragraph 17 of the Complaint.

18.      Defendants admit that Mehra communicated with plaintiff via e-mail and instant messaging, but deny the remaining allegations contained in paragraph 18 of the Complaint.

19.      Defendants deny the allegations contained in paragraph 19 of the Complaint.

20.     Defendants deny the allegations contained in paragraph 20 of the Complaint and refer to the referenced documents for the contents thereof.

21.     Defendants deny the allegations contained in paragraph 21 of the Complaint except deny knowledge and information sufficient to form a belief as to what plaintiff may have done.

22.     Defendants deny the allegations contained in paragraph 22 of the Complaint and refer to the referenced documents for the contents thereof.

23.     Defendants deny knowledge or information sufficient to form a belief as to what plaintiff was prepared to do and otherwise deny the allegations in paragraph 23 of the Complaint.

24.     Defendants deny the allegations contained in paragraph 24 of the Complaint.

25.     Deny the allegations contained in paragraph 25 of the Complaint.

26.     Defendants deny the allegations contained in paragraph 26 of the Complaint.

27.     Defendants deny the allegations contained in paragraph 27 of the Complaint.

28.     To the extent paragraph 28 of the Complaint states a conclusion of law, no response is necessary.  To the extent a response is necessary, defendants deny that plaintiff was ever an "employee" of Think Tech.

29.     To the extent paragraph 29 of the Complaint states conclusions of law, no response is necessary.  To the extent a response is necessary, defendants deny that they were required to make such payments to plaintiff.

30.     To the extent paragraph 30 of the Complaint states conclusions of law, no response is necessary.  To the extent a response is necessary, defendants deny that they were required to make such payments to plaintiff.

31.     Defendants deny the allegations contained in paragraph 26 of the Complaint in paragraph 31 of the Complaint.

32.     To the extent paragraph 32 of the Complaint states conclusions of law, no response is necessary.  To the extent a response is necessary, defendants deny that they were required to provide any such statements to plaintiff.

33.     To the extent paragraph 33 of the Complaint states conclusions of law, no response is necessary.  To the extent a response is necessary, defendants deny that they were required to maintain any such records with respect to plaintiff.

34.     As paragraph 34 of the Complaint merely repeats prior allegations, no response is necessary.

35.     Defendants deny the allegations contained in paragraph 35 of the Complaint.

36.     Defendants deny the allegations contained in paragraph 36 of the Complaint.

37.     Defendants deny the allegations contained in paragraph 37 of the Complaint.

38.     Defendants deny the allegations contained in paragraph 38 of the Complaint.

39.     Defendants deny the allegations contained in paragraph 39 of the Complaint.

40.     Defendants deny the allegations contained in paragraph 40 of the Complaint.

41.     Defendants deny the allegations contained in paragraph 41 of the Complaint.

42.     As paragraph 42 of the Complaint merely repeats prior allegations, no response is necessary.

43.     As paragraph 43 of the Complaint merely states conclusions of law, no response is necessary.

44.     Defendants deny the allegations contained in paragraph 44 of the Complaint.

45.     Defendants deny the allegations contained in paragraph 45 of the Complaint.

46.     Defendants deny the allegations contained in paragraph 46 of the Complaint.

47.     Defendants deny the allegations contained in paragraph 47 of the Complaint.

48.     Defendants deny the allegations contained in paragraph 48 of the Complaint.

49.     As paragraph 49 of the Complaint merely repeats prior allegations, no response is necessary.

50.     To the extent paragraph 50 of the Complaint states conclusions of law, no response is necessary.  Defendants deny that plaintiff was ever an "employee."

51.     Defendants deny the allegations contained in paragraph 51 of the Complaint.

52.     Defendants deny the allegations contained in paragraph 52 of the Complaint.

53.     Defendants deny the allegations contained in paragraph 53 of the Complaint.

54.     Defendants deny the allegations contained in paragraph 54 of the Complaint.

55.     As paragraph 55 of the Complaint merely repeats prior allegations, no response is necessary.

56.     To the extent paragraph 56 of the Complaint states conclusions of law, no response is necessary.  Defendants deny that plaintiff was ever an "employee."

57.     Defendants deny the allegations contained in paragraph 57 of the Complaint.

58.     Defendants deny the allegations contained in paragraph 58 of the Complaint.

59.     Defendants deny the allegations contained in paragraph 59 of the Complaint.

60.     Defendants deny the allegations contained in paragraph 60 of the Complaint.

61.     Defendants deny the allegations contained in paragraph 61 of the Complaint.

62.     As paragraph 62 of the Complaint merely repeats prior allegations, no response is necessary.

63.     Defendants deny the allegations contained in paragraph 63 of the Complaint.

64.     Defendants deny that they were required to keep any records.

65.     Defendants deny the allegations contained in paragraph 65 of the Complaint.

66.     Defendants deny the allegations contained in paragraph 66 of the Complaint.

67.     As paragraph 67 of the Complaint merely repeats prior allegations, no response is necessary.

68.     Defendants deny the allegations contained in paragraph 68 of the Complaint.

69.     Defendants deny the allegations contained in paragraph 69 of the Complaint.

70.     Defendants deny the allegations contained in paragraph 70 of the Complaint.

71.     Defendants deny the allegations contained in paragraph 71 of the Complaint.

72.     As paragraph 72 of the Complaint merely repeats prior allegations, no response is necessary.

73.     Defendants deny the allegations contained in paragraph 73 of the Complaint.

74.     Defendants deny the allegations contained in paragraph 74 of the Complaint.

75.     Defendants deny the allegations contained in paragraph 75 of the Complaint.

76.     Defendants deny the allegations contained in paragraph 76 of the Complaint.

77.     Defendants deny the allegations contained in paragraph 77 of the Complaint.

78.     As paragraph 78 of the Complaint merely repeats prior allegations, no response is necessary.

79.     Defendants deny the allegations contained in paragraph 79 of the Complaint.

80.     Defendants deny the allegations contained in paragraph 80 of the Complaint.

81.     Defendants deny the allegations contained in paragraph 81 of the Complaint.

82.     Defendants deny the allegations contained in paragraph 82 of the Complaint.

83.     Defendants deny the allegations contained in paragraph 83 of the Complaint.

84.     As paragraph 84 of the Complaint merely repeats prior allegations, no response is necessary.

85.     Defendants deny the allegations contained in paragraph 85 of the Complaint.

86.     Defendants deny the allegations contained in paragraph 86 of the Complaint.

87.     Defendants deny the allegations contained in paragraph 87 of the Complaint.

88.     Defendants deny the allegations contained in paragraph 88 of the Complaint.

89.     Defendants deny the allegations contained in paragraph 89 of the Complaint.

90.     As paragraph 90 of the Complaint merely repeats prior allegations, no response is necessary.

91.     Defendants deny the allegations contained in paragraph 91 of the Complaint.

92.     Defendants deny the allegations contained in paragraph 92 of the Complaint.

93.     Defendants deny the allegations contained in paragraph 93 of the Complaint.

94.     As paragraph 94 of the Complaint merely repeats prior allegations, no response is necessary.

95.     Defendants deny the allegations contained in paragraph 95 of the Complaint.

96.     Defendants deny the allegations contained in paragraph 96 of the Complaint.

97.     Defendants deny the allegations contained in paragraph 97 of the Complaint.

98.     Defendants deny the allegations contained in paragraph 98 of the Complaint.

99.     As paragraph 99 of the Complaint merely repeats prior allegations, no response is necessary.

100.     Defendants deny the allegations contained in paragraph 100 of the Complaint.

101.     Defendants deny the allegations contained in paragraph 101 of the Complaint.

102.     Defendants deny the allegations contained in paragraph 102 of the Complaint.

103.   Defendants deny the allegations contained in paragraph 103 of the Complaint.

104.   As paragraph 104 of the Complaint merely repeats prior allegations, no response is necessary.

105.   Defendants deny the allegations contained in paragraph 105 of the Complaint.

106.   Defendants deny the allegations contained in paragraph 106 of the Complaint.

107.   Defendants deny the allegations contained in paragraph 107 of the Complaint.

108.   Defendants deny the allegations contained in paragraph 108 of the Complaint.

109.   Defendants deny the allegations contained in paragraph 109 of the Complaint.

110.   Defendants deny the allegations contained in paragraph 110 of the Complaint.

### First Affirmative Defense

The claims for relief asserted in the Complaint are barred by the doctrine of unclean hands.

### Second Affirmative Defense

The claims for relief asserted in the Complaint are barred by the doctrine of equitable estoppel.

### Third Affirmative Defense

Plaintiff was never an "employee" of TTL and therefore, there is no liability under the FLSA or New York Labor Law ("NYLL").

### Fourth Affirmative Defense

To the extent plaintiff is somehow classified as an "employee" under the FLSA and/or NYLL (which defendants deny), plaintiff did not work in excess of 40 hours during some or all of the workweeks for which he seeks recovery.

## Fifth Affirmative Defense

To the extent plaintiff is somehow classified as an "employee" per the FLSA and/or NYLL (which defendants deny), plaintiff was at all times paid in compliance with any applicable provision of the FLSA and NYLL.

## Sixth Affirmative Defense

To the extent plaintiff is somehow classified as an "employee" per the FLSA and/or NYLL (which defendants deny), Plaintiff's claims are barred to the extent that he is exempt pursuant to one or more exemptions under 29 U.S.C. § 213(a)(1) and 12 N.Y.C.R.R. § 142-2.2 (adopting FLSA exemptions).

## Seventh Affirmative Defense

If defendants are found to have violated the FLSA (which defendants deny), defendants neither knew that their conduct violated the FLSA nor showed reckless disregard for whether their actions complied with the Act.

## Eighth Affirmative Defense

If defendants are found to have failed to pay plaintiff any amount due (which defendants deny), any act or omission giving rise to such failure was in good faith and defendants acted at all times in conformity with, and in reliance on, a written administrative regulation, order, ruling, approval or interpretation of the Wage and Hour Administrator or any administrative practice or enforcement policy of the Administrator with respect to plaintiff while that ruling was in effect. Consequently, pursuant to 29 U.S.C. § 259, defendants are not subject to any liability or punishment for such failure.

### Ninth Affirmative Defense

If defendants are found to have failed to pay plaintiff any amount due (which defendants deny), any act or omission giving rise to such failure was in good faith, and defendants had reasonable grounds for believing that their act or omission did not violate the FLSA or NYLL. Consequently, pursuant to 29 U.S.C. § 260 or N.Y. Lab. Law § 198(1-a), defendants are not liable for liquidated damages.

### Tenth Affirmative Defense

If defendants are found to have failed to provide plaintiff with a wage notice as required by N.Y. Lab. Law § 195(1) (which defendants deny), defendants made complete and timely payment of all wages due, and any act or omission giving rise to such failure was in good faith as defendants had reasonable grounds for believing that they were not required to provide plaintiff with such notice.  Consequently, pursuant to N.Y. Lab. Law § 198(1-b), defendants are not subject to any liability or punishment for such failure.

### Eleventh Affirmative Defense

If defendants are found to have failed to provide plaintiff with wage statements as required by N.Y. Lab. Law § 195(3) (which defendants deny), defendants made complete and timely payment of all wages due, and any act or omission giving rise to such failure was in good faith as defendants had reasonable grounds for believing that they were not required to provide plaintiff with such statements.  Consequently, pursuant to N.Y. Lab. Law § 198(1-d), defendants are not subject to any liability or punishment for such failure.

### Twelfth Affirmative Defense

To the extent plaintiff is somehow classified as an "employee" under the FLSA and/or NYLL (which defendants deny), plaintiff breached his fiduciary duty owed to TTL and TTL is entitled to damages as a result.

**Thirteenth Affirmative Defense**

Any amounts claimed due by plaintiff are offset and/or mitigated by damages incurred by

TTL which were caused by plaintiff.

**WHEREFORE**, the Complaint should be dismissed in its entirety, together with such other

and further relief as the Court may deem just and proper.

## COUNTERCLAIMS

Counterclaim-Plaintiff ThinkTech Labs, LLC ("TTL"), by its attorneys, Haynes and

Boone, LLP, for its counterclaims against counterclaim-defendant Warren Hershkowitz

("Hershkowitz"), states as follows:

### PARTIES

1.      TTL is a limited liability company formed under the laws of the State of

Delaware, with a principal place of business located in Dallas, Texas.  TTL is an application

development and consulting company that helps companies utilize cloud computing concepts

and innovative business solutions.

2.      Upon information and belief, Hershkowitz is an individual who resides in New

York, New York.  Hershkowitz represents himself as a real estate marketing professional and

President and Chief Relationship Officer of Square Foot Advisors, LLC ("SFA").

### JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. § 1331 as Plaintiff has asserted claims

under the Federal Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA").  The Court has

supplemental jurisdiction pursuant to 28. U.S.C. § 1367 to the extent the complaint and/or the

counterclaims allege statutory, state common law, or other non-Federal claims.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred within this District.

### RELEVANT FACTS FOR COUNTERCLAIMS

5.      TTL developed a cloud application known as REthink Real Estate CRM ("REthink") which was designed, developed, and marketed on the Salesforce.com platform. TTL has marketed its REthink product to various entities involved in real estate across the United States.

6.      TTL's marketing efforts are geared towards having real estate related entities utilize the REthink product.

7.      In this regard, TTL has invested a great deal of time, effort, and money in marketing its product to prospective customers through trade shows, daily webinars, sales calls, and advertisements on the Internet.  TTL has developed and supported a portal to provide prospective customers with information and has developed products to improve client service.

8.      TTL marketed its REthink services to, among others, Keller Williams Realty International ("KW"), Fameco Real Estate, LP ("Fameco"), HPI Real Estate Services & Investments ("HPI"), CBRE Group, Inc. ("CBRE"), and SRS Real Estate Holdings LLC ("SRS").

9.      In mid-to-late 2010, Hershkowitz approached TTL about utilizing REthink in connection with SFA's business.  At that time, cloud computing on the Salesforce.com platform was a relatively new concept and TTL was one of the few companies to offer such services for the real estate industry.

10.     Hershkowitz represented to TTL that he would be able to leverage the REthink technology platform and attract numerous customers to TTL (including a number of real estate brokers, given his purported connections).

11.     Hershkowitz also represented that he had extensive knowledge of the Salesforce.com platform on which REthink was built.

12.     Upon information and belief, Hershkowitz's true motivation was to utilize the REthink platform to inject himself into real estate related entities in order for him to be able to offer his and/or SFA'a consulting services to such entities.

13.     Hershkowitz failed to deliver on the representations he made to TTL.  Among other things, between late-2010 and the end of 2012, Hershkowitz attracted far fewer customers to TTL than previously represented.

14.     In addition, Hershkowitz misrepresented to TTL that he had extensive knowledge of the Salesforce.com software platform; Vijay Mehra spent numerous hours training Hershkowitz on the fundamentals of the Salesforce.com platform.

15.     In late 2012, TTL decided to develop a nationwide sales team in an effort to accelerate its growth.  Hershkowitz offered to assist in these efforts.

16.     As a result, in early 2013, TTL and Hershkowitz began discussions about modifying Hershkowitz's involvement with TTL so that he would become an employee of TTL. These discussions petered out in March 2013, and did not result in an agreement, understanding, or arrangement whereby Hershkowitz became an employee of TTL.

17.     Various communications confirm that, contrary to Hershkowitz's allegations, no employment agreement or arrangement was reached with TTL.

18.     By early April 2013, the relationship between Hershkowitz and TTL was coming to a close.  Among other things, Hershkowitz had failed to recruit and develop a national sales team as promised, displayed an overall lack of commitment to TTL, and exhibited questionable moral and ethical practices.

19.     Hershkowitz was paid for the services he rendered to TTL.

20.     At all times, Hershkowitz was paid for the services he rendered to TTL as an independent contractor.

21.     At all times, Hershkowitz understood and acknowledged that he was being treated by TTL as an independent contractor.

22.     At all times, Hershkowitz had control over what services he was going to provide TTL and when he would provide such services. There was never any agreed-upon schedule for which Hershkowitz was going to and/or did provide services to TTL.

23.     Hershkowitz and TTL never entered into any written agreement, arrangement, or understanding as to Hershkowitz's relationship with TTL.

24.     At all times, Hershkowitz was free to engage in business activities for himself, including through SFA.

25.     Upon information and belief, at all relevant times, Hershkowitz continued to operate a business, including SFA, wholly independent from TTL.

26.     When it became clear that the relationship between Hershkowitz and TTL was fractured, Hershkowitz (and others on his behalf) began to contact existing and prospective customers of TTL.  Hershkowitz knew of TTL's desire and intention to enter into and/or continue business relationships with such entities.

27.     For example, on or about May 1, 2013, Hershkowitz's attorney, Joseph A. Piesco,

Jr., sent a letter to KW, a prospective TTL customer, in which he advised KW that Hershkowitz

intended to file a lawsuit against TTL.  The letter stated, in pertinent part:

> As you may be aware, Mr. Hershkowitz and SFA intend to file a lawsuit against
> Vijay Mehra and Think Tech Labs, LLC ("Think Tech") in connection with their
> failure to pay commissions, wages and/or other remuneration to which our clients
> are entitled, pursuant to an agreement between Mr. Hershkowitz and Mr. Mehra.
> In connection with such litigation, our clients will seek a declaratory judgment
> against Mr. Mehra and Think Tech seeking, among other things, a determination
> that our clients are entitled to receive commissions on any future deals in which
> our clients in any way participated.  Of course, this would include any deal
> between Keller Williams Realty ("Keller") and Think Tech (or any of its
> affiliates) relating to the production of any and all customizations to the REthink
> CRM SAAS platform or any technology outlined in the Definitive Agreement
> between Think Tech and Keller . . .

28.     Upon information and belief, Hershkowitz and/or Piesco, on Hershkowitz's

behalf, communicated with other clients and/or potential clients of TTL, including, without

limitation, Fameco, HPI, CBRE, and SRS, and expressed negative opinions about TTL and/or

sought to cast a negative light on TTL and Mehra.

29.     After receiving a letter from Piesco, Fameco informed Mehra that it was no longer

interested in doing business with TTL.

30.     After receiving communications from Piesco and/or Hershkowitz, KW, HPI, SRS,

and CBRE, among others, expressed concerns about entering into and/or continuing business

relationships with TTL.

31.     In order to salvage such relationships and/or prospective relationships, TTL was

compelled to offer services at reduced or no cost, including, without limitation, providing on-site

customer visits, and offering additional warranties, guaranties and indemnification.

32.     As a result of Hershkowitz's actions, TTL suffered a loss of business

opportunities, as well as a loss of potential revenues.

33.     During the course of the relationship between Hershkowitz and TTL, Hershkowitz was provided with and given access to TTL's confidential and proprietary business information, including, without limitation, information regarding TTL's sales opportunities, customer lists (which included key personnel names and contact information), TTL's technology infrastructure, and details about the structure and makeup of TTL's projects for prospective customers.  This information was provided to Hershkowitz solely and specifically for use in his efforts on TTL's behalf and was not to be disseminated without TTL's prior consent or authorization.

34.     Without TTL's consent or permission, Hershkowitz disseminated TTL's confidential and proprietary information.

35.     For example, upon information and belief, on or about March 1, 2013, Hershkowitz used a product called Data Loader in order to access TTL's Salesforce.com data, which allowed Hershkowitz access to virtually all of TTL's confidential and proprietary information as well as TTL's customer contacts.

36.     As another example, on March 4, 2013, Hershkowitz forwarded confidential and proprietary information regarding TTL's potential sales opportunity with Coldwell Banker to his wife, Robin Hershkowitz.  The information contained within this e-mail was confidential and proprietary and included information regarding TTL's technology infrastructure.  This information was not known outside of TTL.

37.     As another example, on March 8, 2013, Hershkowitz sent an e-mail to Rick Garrett (upon information and belief, an employee of or consultant to SFA), which contained privileged TTL client login information.

38.     On or about March 21, 2013, Hershkowitz sent an e-mail to Garrett enclosing TTL's proposed Statement of Work with KW.  The document contained confidential and proprietary information belonging to TTL that was not known outside of TTL, including information about TTL's technology infrastructure, TTL's "recipe" for the project TTL was to deliver to KW, and the confidential requirements which defined KW's CRM architecture (which TTL had defined and collaborated to create with KW and which KW had specifically forbade TTL and Hershkowitz from discussing with anyone).

39.     Upon information and belief, Hershkowitz forwarded confidential and proprietary information of TTL to Garrett on a regular basis, without TTL's knowledge, consent, or permission.  Hershkowitz also shared with Garrett confidential information about TTL's clients and/or prospective clients, directly in violation of TTL's agreements with its clients and/or prospective clients, which agreements Hershkowitz was aware and/or had knowledge of.

40.     Hershkowitz had access to such confidential and proprietary information solely by virtue of his relationship with TTL, and circulated such confidential and proprietary information and/or work product without TTL's knowledge, consent, or permission.

41.     Upon information and belief, Hershkowitz forwarded confidential and proprietary information of TTL to Garrett and others for the purpose of interfering with and/or competing with TTL's business.

**FIRST COUNTERCLAIM FOR RELIEF:**

**(Tortious Interference with Prospective Business Relations)**

42.     TTL repeats the allegations contained in paragraphs 1 through 41 of its Counterclaims as if fully set forth herein.

43.     As described above, by virtue of his relationship with TTL, Hershkowitz had knowledge of TTL's current and prospective business relationships.

44.     As described above, Hershkowitz communicated with various customers and/or prospective customers of TTL without the consent or permission of TTL in an effort to damage TTL's relationships with such customers and/or prospective customers.

45.     By interfering with the relationships between TTL and its customers and/or prospective customers, Hershkowitz acted improperly and with a malicious purpose, driven by his intent to prevent TTL from forming and/or continuing business relationships with such customers.

46.     As a direct and proximate result of Hershkowitz's actions, TTL has suffered monetary damages, in amounts to be determined at trial.

47.     As described above, Hershkowitz acted wrongfully and with an improper malicious motive in reckless disregard of TTL's rights.  As such, TTL is entitled to an award for punitive damages.

### SECOND COUNTERCLAIM FOR RELIEF:

### (Misappropriation of Confidential Business Information)

48.     TTL repeats the allegations contained in paragraphs 1 through 47 of its Counterclaims as if fully set forth herein.

49.     As described above, Hershkowitz disseminated confidential and proprietary information of TTL without TTL's knowledge, consent, or permission.

50.     As a result of Hershkowitz's actions, TTL has suffered monetary damages, in amounts to be determined at trial.

51.     TTL further seeks declaratory and/or injunctive relief preventing Hershkowitz, and others acting on his behalf, from using, in any manner, or disseminating TTL's confidential and proprietary information.

**WHEREFORE**, TTL respectfully requests that the Court enter judgment in its favor and against Hershkowitz for money damages, in amounts to be determined at trial, and further seeks declaratory and/or injunctive relief from the Court directing and preventing Hershkowitz from using, in any manner, or disseminating TTL's confidential and proprietary information, together with such other and further relief as the Court may deem just and proper.

Dated: August 16, 2013

> HAYNES and BOONE, LLP
> *Counsel for Think Tech Labs, LLC*
> *and Vijay Mehra*
>
>
> By: */s/ Kenneth J. Rubinstein*
> Kenneth J. Rubinstein
> Sarah Jacobson
> 30 Rockefeller Plaza, 26th Floor
> New York, New York 10112
> (212) 659-7300
> ken.rubinstein@haynesboone.com